IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Criminal No. SAG-22-0431** |
| **TREVON GARDNER,** | * | |
| Defendant. | * | |
| | ...oOo... | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, and John W. Sippel, Jr., Assistant United States Attorney for said District, submits this Sentencing Memorandum to assist the Court in the sentencing of defendant Trevon Gardner.

For the reasons discussed below, the United States respectfully requests that the Court impose a sentence of 144 months' imprisonment to reflect the violent and serious nature of the offenses, including the use of a firearm during an assault and carjacking of a Baltimore City Police Department Detective.

### I. BACKGROUND

On December 14, 2022, an indictment was returned against defendant Gardner, charging him with Carjacking, in violation of 18 U.S.C. § 2119(2) (Count One); Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Two); and Aiding and Abetting, in violation of 18 U.S.C. § 2 (Counts One and Two).

## II.  FACTS

The following facts were agreed upon by Gardner in the plea agreement:

On May 3, 2022, Baltimore City Police Department ("BPD") Detective Aaron Cain was at a 7-11 store located at 2830 South Hanover Street in the Cherry Hill neighborhood of Baltimore City, Maryland.  Detective Cain wore his training uniform, which consisted of dark cargo-style pants, a polo shirt with an embroidered BPD badge emblem on the chest area, his BPD credentials on a lanyard around his neck, and his BPD badge, radio, and service weapon on his waistband.  He drove an unmarked BPD vehicle (a 2018 Ford Fusion).

Video surveillance camera footage shows Detective Cain walking towards his vehicle and opening the front passenger door.  The Defendant and two other males then approached the vehicle.  One of the men brandished a handgun and struck Detective Cain in the upper body near his head, causing Detective Cain to fall to the ground, striking his head.  While Detective Cain was on the ground, one of the men kicked and punched Detective Cain.  The three males then entered the BPD vehicle and sped away.  Detective Cain got to his feet and discharged his weapon at the vehicle.

Video surveillance footage from a local business shows the BPD vehicle traveling at a high rate of speed as it exited the Hanover Street Bridge in South Baltimore.  The vehicle flipped onto its roof and crashed approximately one-half mile from the 7-11 store.  The Defendant and the other two males bailed-out from the vehicle and attempted to flee from the scene.  The Defendant and a juvenile male were quickly apprehended.  The third suspect was not apprehended.  A black Taurus 9mm handgun was located next to the wrecked police vehicle, loaded with nine rounds of ammunition.  At the time of the Defendant's arrest, he wore one black and white Nike slide.  A matching Nike slide was located adjacent to the wrecked police vehicle.

Following the incident, Detective Cain went to Mercy Hospital where he was diagnosed with a mild concussion.

The BPD vehicle, a 2018 Ford Fusion, was manufactured outside of Maryland and therefore affected interstate commerce.

The Defendant stipulates that the three men used, carried, and brandished a firearm during and in relation to the carjacking on May 3, 2022.

*See* Plea agreement at p 11.

### III.   ADVISORY GUIDELINES AND CRIMINAL HISTORY CALCULATIONS UNDER THE UNITED STATES SENTENCING GUIDELINES

The parties stipulated and agreed in the plea agreement that the advisory guidelines calculation under the United States Sentencing Guidelines ("U.S.S.G.") is as follows:

The base offense level for Count One is 20 pursuant to U.S.S.G. § 2B3.1(a).  The base offense level is increased by two levels because the victim sustained bodily injury, pursuant to U.S.S.G. § 2B3.1(b)(3)(A).  The base offense level is further increased by two levels because the offense involved carjacking, pursuant to U.S.S.G. § 2B3.1(b)(5).  An additional six levels is added to the calculation because Gardner, in a manner creating a substantial risk of serious bodily injury, knew or had reasonable cause to believe that the victim was a law enforcement officer and assaulted such officer during the course of the offense or immediate flight therefrom, pursuant to U.S.S.G. § 3A1.2(c).  The offense level is reduced by three levels due to Gardner's timely acceptance of responsibility, resulting in an offense level of 27.

For Count Two, the sentence is 84 months, consecutive to any other sentence imposed by the Court, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(ii).

The Government does not believe that Gardner has any prior convictions.   Therefore, his criminal history category is I.

A total offense level of 27 and a criminal history category of I results in an advisory guidelines range of 70-87 months' imprisonment.  Count Two carries an 84-month mandatory minimum sentence, which runs consecutive to any other sentence.   18 U.S.C. § 924(c)(1)(A)(i).

Based on the foregoing, the combined advisory guideline range is 154-171 months (including the 84-month mandatory, consecutive sentence).

## IV.  SENTENCING

**A.   A Sentence of 144 Months' Imprisonment Is Fair, Reasonable, and Not Greater Than Necessary**

As discussed more fully below, a sentence of 144 months' (12 years') imprisonment is reasonable and appropriate in this case.

### 1.   The § 3553(a) Factors Support a Sentence of 144 Months' Imprisonment

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).  In determining that sentence, this Court must consider:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed – "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

(3) "the kinds of sentences available;"

(4) "the Guidelines and Guidelines range;"

(5) "any pertinent policy statement;"

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

*See* 18 U.S.C. § 3553(a).

Here, a sentence of 144 months' imprisonment is supported by the § 3553(a) factors.  Of course, a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States*, 551 U.S. 338, 351 (2007), and "may not presume

4

that the Guidelines range is reasonable," *Gall v. United States*, 552 U.S. 38, 50 (2007). Examination of the pertinent § 3553(a) factors, however, shows that a sentence of 144 months' is warranted here.

      a.      **The Nature and Circumstances of the Offenses**

In this case, Gardner assaulted and carjacked a Baltimore City Police Department ("BPD") Detective along with two other young men at a 7-11 store located in the Cherry Hill neighborhood of Baltimore City, Maryland. At the time of the assault and carjacking, the BPD Detective wore his training uniform, which consisted of dark cargo-style pants, a polo shirt with an embroidered BPD badge emblem on the chest area, his BPD credentials on a lanyard around his neck, and his BPD badge, radio, and service weapon on his waistband. Video surveillance camera footage from the 7-11 store shows the BPD Detective walking towards his vehicle and opening the front passenger door. Gardner and the two other young men approached the vehicle, and one of the men brandished a handgun. One of the men then struck the Detective in his upper body near his head, causing the law enforcement office to fall to the ground and hit his head to the ground. While the Detective was on the ground, one of the young men kicked and punched the Detective.

The young men then entered the Detective's unmarked BPD vehicle - a 2018 Ford Fusion. The young men exited the 7-11 parking lot in the BPD vehicle at a high rate of speed. The Detective was able to get to his feet and discharge his service weapon at the vehicle.

Video surveillance footage from a local business shows the BPD vehicle traveling at a high rate of speed as it exited the Hanover Street Bridge in South Baltimore. The vehicle flipped onto its roof and crashed approximately one-half mile from the 7-11 store. Gardner and the other two other young men bailed-out from the vehicle and attempted to flee from the scene. Gardner and a juvenile male were quickly apprehended.

The offenses committed by Gardner are violent and disturbing and warrant a lengthy sentence.

### b. The Nature and Characteristics of the Defendant

Gardner was in his early 20s at the time of the crimes charged in the indictment. While he has no prior criminal record, Gardner's conduct was outrageous and dangerous. The armed assault and carjacking of an identifiable law enforcement officer reflects a young man who has no respect for authority or the law.

### c. The Need for the Sentence Imposed

A sentence of 144 months' imprisonment with the Bureau of Prisons is necessary in this case to reflect the seriousness of the offense, promote respect for the law, and to protect the public from Gardner. The offenses of conviction in this case are violent and serious. The combination of violence and use of a firearm in the commission of an assault and carjacking of an identifiable law enforcement office necessitates a significant sentence. A sentence of 144 months' imprisonment would promote respect for the law.

Importantly, a sentence of 144 months would protect the public from Gardner. As discussed above, Gardner's participation in the assault and carjacking of a BPD Detective reflects a brazen defiance and lack of respect towards law enforcement. The audacity of utilizing a firearm to assault and carjack an identifiable law enforcement officer demands a harsh sentence. Moreover, the Court must recognize the physical and mental impact that Gardner's conduct had on the BPD Detective.

### d. The Kinds of Sentences Available

The "kind of sentences available," 18 U.S.C. § 3553(a)(3), includes imprisonment. In this case, a term of imprisonment is warranted by the § 3553(a) factors.

e.   **The Guidelines Range is an Important § 3553(a) Factor**

The Guidelines range is itself a § 3553(a) factor. "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n. 6 (2007). Indeed, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the [Guideline range] with reference to the latter." *Nelson v. U.S.*, 555 U.S. 350. 351-51 (2009). Accordingly, courts must give "respectful consideration to the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007). The Supreme Court has emphasized that "where judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its "not greater than necessary" requirement)," and that "significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347, 350-51, 354-55. Here, the agreed-upon sentence is slightly below the advisory guidelines but reflect the violent and serious nature of the crimes committed by Gardner.

f.   **Pertinent Policy Statement**

There is not a pertinent policy statement applicable to this case.

g.   **The Need to Avoid Unwarranted Sentence Disparities**

In this case, a sentence of 144 months' imprisonment would avoid any unwarranted sentence disparities in similar cases charged in the District of Maryland.

h.   **Restitution to Victims**

Restitution is not an issue at this point in the proceedings.

## V.  CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court sentence defendant Trevon Gardner to 144 months' imprisonment with the Bureau of Prisons, as such sentence is warranted under the factors enumerated under 18 U.S.C. § 3553(a).

                                    Respectfully submitted,

                                    Erek L. Barron
                                    United States Attorney

Date:   December 2, 2024

                                    John W. Sippel, Jr.
                                    Assistant United States Attorney
                                    36 S. Charles Street, Fourth Floor
                                    Baltimore, Maryland 21201
                                    (410) 209-4807

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the   2nd   day of December 2024, a copy of the foregoing Government's Sentencing Memorandum was served via ECF to counsel of record.

                                    John W. Sippel, Jr.
                                    Assistant United States Attorney